# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | |
| AARON K. HILL | ) | CASE NO. 14-33623 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| CMCO MORTGAGE, LLC | ) | AP NO. 15-3001 |
| D/B/A HOME LENDING SOURCE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | |
| | ) | |
| AARON K. HILL | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This adversary proceeding comes before the Court on the Motion for Summary Judgment[1] (the"Motion") filed by Plaintiff CMCO Mortgage, LLC d/b/a Home Lending Source ("HLS"). The Debtor, Aaron K. Hill ("Hill"), opposes the motion. The Court has considered the Motion, the responses of Hill, the supporting documents submitted by each party, and the comments of counsel given at the hearing held on the Motion, as well as the entire record presented to the Court in this matter. For the following reasons, the Court will grant HLS' Motion for Summary Judgment.

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The

---

[1] The actual document (Doc. No. 34) is styled as a Motion for Judgment on the Pleadings, but the body of the motion as well as the supporting Memorandum references summary judgment as the relief being sought. The Court will treat the matter as a summary judgment motion, and believes the incorrect nomenclature relates back to a previous pleading (Doc. No. 8) that was denied by Order dated June 3, 2015.

Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a).

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not in dispute. HLS was a mortgage company, where Hill worked as an employee. HLS terminated Hill on February 17, 2012, after HLS learned that Hill was taking actions HLS believed were adverse to its interests. In February 2012, HLS filed an action in Jefferson Circuit Court against Hill, and seventeen (17) other defendants. HLS amended its complaint in March 2012. HLS alleged that beginning in 2011, Hill began discussions with Peoples Bank, a direct competitor of HLS. Between November 2011 and February 2012, Hill allegedly engaged in unauthorized and extensive negotiations with Peoples Bank to open an internet division that would directly compete with HLS and while utilizing HLS employees. HLS alleged that in the course of his discussions with Peoples Bank, Hill disclosed HLS' confidential and proprietary information to Peoples Bank. Furthermore, HLS alleged that Hill sent HLS' trade secrets to Peoples Bank without HLS' consent.

HLS alleged numerous claims against Hill, including: 1) Breach of Contract; 2) Breach of Fiduciary Duty; 3) Interference with Actual or Prospective Business Advantage; 4) Unfair Competition, Usurpation of Corporate Business Opportunities; 6) Trade Secret Misappropriation; 7) Conversion; and 8) Unjust Enrichment.

Peoples Bank paid for Hill's representation, and retained an attorney to represent Hill and the other individual defendants who had been HLS employees. Hill filed an answer, and asserted counterclaims against HLS. In July, 2013, a mediation was held and the claims with the other defendants were settled. The claims against Hill were not settled. After the mediation, Hill's attorney was apparently told by Peoples Bank that it would no longer pay for the representation of

2

Hill. Nevertheless, that attorney continued to represent Hill *gratis* for a short period of time, but eventually the attorney withdrew on October 2, 2013, leaving Hill unrepresented.

Hill continued *pro se* in the state court litigation. On February 11, 2014, the state court entered an order setting the case for a pretrial conference on August 19, 2014 and for a trial to be held on September 22, 2014. After Hill failed to appear at the pretrial conference, on August 20, 2014, the state court entered a default judgment against Hill, as well as a judgment in favor of HLS on all claims asserted by Hill (the "Default Judgment"). The Default Judgment was entered in response to HLS' motions for sanctions due to Hill's "repeated and intentional failures to comply with the Court's Second Jury Trial Order dated February 11, 2014, and his failure to appear at the final pretrial conference." Exh. C & D to the Complaint.

On September 22, 2014, the state court held a trial to determine HLS' damages on its complaint. HLS appeared and presented evidence as to its damages, and on October 3, 2014, the state court entered Findings of Fact and Judgment for Plaintiff CMCO Mortgage, LLC, D/B/A Home Lending Source against Hill in the amount of $3,417,477.00, with interest at twelve percent (12%) compounded annually (the "Damages Judgment") . According to the Damages Judgment, Hill was aware of the trial date, but failed to attend or otherwise participate in the trial.

The state court made several relevant findings in the Damages Judgment. At ¶6, the state court found that Hill engaged in unauthorized discussion to open an internet division that would be competitive to HLS, using HLS employees. The court found Hill disclosed HLS' confidential and proprietary information to Peoples Bank. Moreover, Hill emailed the HLS information from his HLS email account to a personal email account before sending the information to Peoples Bank to avoid detection by HLS.

3

At ¶ 7, the court found Hill sent HLS' trade secrets to Peoples Bank. These trade secrets had an economic value.

At ¶ 12 of the Damages Judgment, the state court found that Hill's actions were "willful, intentional, in bad faith, egregious, and done with malice." The court further determined that Hill's "actions caused a willful and malicious injury to HLS" and constitute "fraud and defalcation while acting in a fiduciary capacity given his intentional misrepresentations made to conceal his wrongful actions from HLS, and his failure to meet his fiduciary obligations to HLS." The court also found that "Hill intended the consequences of his actions, namely the destruction of HLS' internet division. Hill's actions were done in reckless disregard of HLS' economic interests and expectancies."

Although Hill filed a motion to reconsider, the state court denied the motion and neither the Default Judgment nor the Damages Judgment were appealed, vacated, or otherwise modified.

On September 29, 2014, Hill filed a petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code. On October 29, 2014, HLS filed its timely Proof of Claim for $3,417,477.00. Upon motion by HLS, pursuant to 11 U.S.C. § 362(d), this Court entered an order on June 8, 2015, annulling the automatic stay as it applied to the Damages Judgment issued by the state court on September 22, 2014 and entered on October 3, 2014.

On January 5, 2015, HLS filed this adversary proceeding against Hill, seeking a determination that the debts owed by Hill to HLS are non-dischargeable pursuant to 11 U.S.C. § 523 and seeking to deny Hill's discharge pursuant to § 727(a). HLS sought to except the debt from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). HLS sought to deny Hill's discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

Hill answered the complaint denying the material allegations.

On July 21, 2015, HLS filed the Motion currently before the Court. HLS filed its summary judgment motion only on its claim for non-dischargeability under § 523(a)(6), alleging there are no material facts in dispute that Hill's conduct was "willful and malicious."

As will be discussed more fully below, Hill opposed the Motion, arguing a variety of theories.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the Court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." Jones v. Union County, 296 F.3d 417, 423 (6th Cir. 2002). See generally Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997) (emphasis added). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. Tennessee Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir. 1996). Absent such evidence from the nonmoving party in a motion for summary judgment, the Court need not comb the entire record to determine if any of the available evidence could be construed in such a light. See In re Morris, 260 F.3d 654, 665 (6th Cir. 2001)

5

(holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact").

## DISCUSSION

HLS seeks to have the debt owed to it by Hill declared nondischargeable in Hill's Chapter 7 bankruptcy proceeding. HLS' Motion for Summary Judgment contends that Hill's actions constitutes willful and malicious injury under 11 U.S.C. § 523(a)(6).

HLS argues that under the doctrine of collateral estoppel, the judgment of the state court should be given preclusive effect to establish that Hill's conduct constituted a "willful and malicious injury" within the meaning of § 523(a)(6), such that his debt to HLS is nondischargeable.

It is without question that the doctrine of collateral estoppel applies in bankruptcy proceedings. See Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (A bankruptcy court may properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action); In re Brown, 489 Fed. Appx. 890 (6th Cir. 2012). Under the standards of full faith and credit enunciated in 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Schedule. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). When assessing whether a state court judgment should be given preclusive effect in a nondischargeability action, a bankruptcy court may review the entire record in the state court case to determine the grounds for, or the meaning of, the state court's judgment or order. Miller v. Grimsley (In re Grimsley), 449 B.R. 602, 615 (Bankr. S.D. Ohio 2011).

When applying collateral estoppel principles to a nondischargeability proceeding, a

6

bankruptcy court is directed to apply the law of the forum where the original proceeding took place. Wolstein v. Docteroff (In re Docteroff), 133 F.3d 210, 214 (3rd Cir. 1997). Normally, this entails applying the law of collateral estoppel from the state in which the underlying judgment was rendered. The Sixth Circuit has held that the application of collateral estoppel in a nondischargeability action is contingent upon whether the applicable state law would give collateral estoppel effect to the prior judgment. Bay Area Factors v. Calvert (In re Calvert), 105 F.3d 315 (6th Cir. 1997). See also In re Francis, 226 B.R. 385, 388 (B.A.P. 6th Cir.1998) (state court judgments may be given preclusive effect in nondischargeability actions if the law of that state would apply collateral estoppel to the judgments). Thus, this Court must look to Kentucky law to determine if collateral estoppel applies in this case.

In order for collateral estoppel to apply under Kentucky law, a party must establish four elements. First, (1) "the issue in the second case must be the same as the issue in the first case." In addition, the issue must have been (2) actually litigated, (3) actually decided, and (4) necessary to the court's judgment. Coomer v. CSX Transp., Inc., 319 S.W.3d 366, 374 (Ky. 2010); Buis v. Elliot, 142 S.W.3d 137, 140 (Ky. 2004).

The Court will first address the identity of issues element. HLS argues that the identity of issues requirement is met because the debt resulted from the prior state court litigation against Hill. The debt is based upon several separate causes of action, including interference with actual or prospective business advantage; unfair competition, usurpation of corporate business opportunities; trade secret misappropriation; and conversion. If proven, each of these counts would support a claim for willful and malicious injury under § 523(a)(6).

This Court agrees. Hill's actions were indisputably adjudged by the Jefferson Circuit Court

to have been "willful, intentional, in bad faith, egregious, and done with malice." Said actions led to injury to HLS in an amount equal to the Damages Judgment.

Under § 523(a)(6), a debt is nondischargeable if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). HLS, as the party seeking application of the exception, bears the burden of proving its elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Under 11 U.S.C. § 523(a)(6), in order to find "willful and malicious injury," a bankruptcy court must find the debtor "(1) intended to cause injury to the Creditor or to the Creditor's property, or (2) engaged in an intentional act from which [the debtor] believed injury would be substantially certain to result." In re Sweeney, 264 B.R. 866, 871 (Bankr. W.D. Ky. 2001) (citing Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 464 (6th Cir.1999)); see also Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (holding that, with respect to the intent requirement under § 523(a)(6), "[t]he section's word 'willful' modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.").

This case is very similar to the case in Spring Works, Inc. v. Sarff (In re Sarff), 242 B.R. 620, 625 (B.A.P. 6th Cir. 2000). In that case, Gregory Sarff ("Sarff") was a former sales person for Spring Works, Inc. ("Spring Works"), a bedspring manufacturer. While still employed by Spring Works, Sarff began providing services to a competitor of Spring Works, National Spring ("National"). Specifically, while employed by Spring Works, Sarff loaned money to National to purchase office equipment, purchased a phone system for National, and referred a Spring Works

customer to National. Id. at 625-26.  The BAP found that such conduct met the standards for non-dischargeability pursuant to 523(a)(6) and held:

> There is no question that Sarff, both individually and in concert with the other defendants in the state court action, willfully and maliciously caused injury to [Spring Works] by misappropriating trade secrets and interfering with business relations. The bankruptcy court noted that the state court's award of punitive damages further indicated that the state court found that Sarff acted with malice.
> . . .
> Those actions indicate an intention to cause Spring Works economic injury by taking customers from Spring Works. Accordingly, the compensatory damage award in the judgment is nondischargeable under § 523(a)(6). The part of the bankruptcy court's order finding the compensatory damages for breach of the duty dischargeable is reversed.
> . . .
> [t]his is not the case of an 'honest but unfortunate' debtor. Sarff intentionally injured Spring Works by competing with it while he had a duty of loyalty to the company. He stole from Spring Works to aid a competitor and he repeatedly violated an injunction prohibiting him from competing against Spring Works. The bankruptcy court correctly held that it was bound to apply the state court findings to determine whether the judgment was nondischargeable under § 523(a)(6).

Id. at 627-629 (citations omitted).

Here, as set forth below, there is no dispute of material fact that Hill's debts were caused by a "willful and malicious injury" to the property of HLS, as defined by relevant case law.  Like in the Sarff case, there was a specific finding that Hill's actions were "willful, intentional, in bad faith, egregious, and done with malice."  The state court further determined that Hill's "actions caused a willful and malicious injury to HLS."  Further, the court held that "Hill intended the consequences of his actions, namely the destruction of HLS' internet division."  Under even the most conservative reading, these findings comport with the requirements of § 523(a)(6).  As such, this Court finds that the identity of issues element has been met.

9

Next, the Court turns to the second element, that the issue was actually litigated. The Court will first state that, unlike some states, Kentucky gives preclusive effect to default judgments. See Davis v. Tuggle's Admr., 297 Ky. 376, 178 S.W.2d 979 (1944); In re Morris, 229 B.R. 683, 685 (Bankr. E.D. Ky. 1999). See also In re Bursack, 65 F.3d 51, 54 (6th Cir. 1995) (noting that under Tennessee law, a default judgment satisfies Tennessee's "actually litigated" requirement). Further, in In re Calvert (Bay Area Factors, a Division of Dimmitt & Owens Financial, Inc. v. Calvert), 105 F.3d 315, 318 (6th Cir. 1997), the Sixth Circuit Court of Appeals applied California law, which, like Kentucky, also gives preclusive effect to default judgments. The Circuit Court held that a party who permits a default judgment to be entered confesses the truth of all material allegations in the complaint, so that a default judgment is as conclusive upon the issues tended by the complaint as if rendered after an answer is filed and a trial held on the allegations. Thus, under Kentucky law, even though this was a default judgment, it still satisfies the "actually litigated" element for collateral estoppel to apply.

Even if Kentucky did not give preclusive effect to default judgments, under the facts of this case, collateral estoppel would still preclude Hill from re-litigating these issues. Generally speaking, federal law holds that the doctrine of collateral estoppel is not applicable to those prior judgments entered by default because the issues to be precluded were not "actually litigated" in the prior proceeding. Frank v. Daley (In re Daley), 776 F.2d 834, 838 (9th Cir. 1985) (citation omitted), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

There are exceptions to this general rule, however, when the underlying judgment does not conform to the typical default judgment situation; that is, a default judgment entered for some reason other than the defendant's failure to appear or otherwise answer a complaint. For example, the

10

"actually litigated" requirement of the collateral estoppel test has been applied to default judgments where a party substantially participates in the underlying action, but then later, after much expense and time, decides to abandon his defense. FDIC v. Daily (In re Daily), 47 F.3d 365, 368–69 (9th Cir. 1995) (a debtor who actively, but obstructively participates in litigation may be bound by default judgment entered therefrom). A default judgment has been given preclusive effect when it is rendered as a discovery sanction. Wolstein v. Docteroff (In re Docteroff), 133 F.3d 210, 215 (3d Cir. 1997). A party "who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application." Id. "To hold otherwise would encourage behavior similar to [the debtor's] and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." Id. Other cases have reached the same result: Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1324–25 (11th Cir. 1995) (collateral estoppel applied where debtor, despite substantial participation in the underlying action, refused without any justification to produce documents and appear at a deposition).

Here, HLS' state-court complaint raised the issues of willful and malicious conduct by Hill. The issues were actually litigated to the extent that Hill retained an attorney, filed an answer, asserted counterclaims, and participated in discovery. In fact, until Hill's attorney withdrew, Hill vigorously litigated the case. His strategic decision to abandon his defense late in the proceeding does not undo his earlier active participation in the litigation. In re Bursack, 65 F.3d 51, 54 (6th Cir. 1995). According to the Damages Judgment, the basis for the default judgment was that Hill repeatedly, and intentionally, refused to comply with a trial order and failed to appear at the final pretrial conference. Thus, it appears that Hill deliberately or otherwise intentionally set about to delay or interfere with the trial in the state court litigation. As such, the facts of this case rise to the

11

level of the conduct present in Docteroff and the other cases which have applied the collateral estoppel doctrine to a prior default judgment entered as a sanction.

Next, the third element necessary for the application of collateral estoppel is that the issue was actually decided. This element is easily met as demonstrated by the Default Judgment. Clearly, the state court found Hill liable for his conduct, and entered the Damages Judgment as a result.

Finally, the issue was necessary to the state court's judgment. A decision on Hill's conduct was necessary in order to find him liable under the counts asserted by HLS in the state court action. The Findings of Fact entered in connection with the Damages Judgment show that the state court specifically considered Hill's actions in reaching its damages award. Therefore, when all things are considered, the Court finds that applying the collateral estoppel doctrine to those averments contained in HLS' verified amended complaint from the state court case is appropriate under the particular facts of this case.

The Court will conclude by addressing some of the points raised by Hill in his Response to the Motion for Summary Judgment. Hill argues that he did not have adequate notice of either proceeding that culminated in default. Hill argues that to trigger the full faith and credit statutory directive of 28 U.S.C. § 1738, "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). "[No] single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause ... [Rather the] very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Id. at 483, 102 S.Ct. 1883 (internal quotation marks and citations omitted).

Hill argues that he did not have a full and fair opportunity to litigate the issues in the state court action because he did not receive notice of the pretrial or damages hearing. He argues that after his counsel withdrew, notices were sent to an address that was not his. Hill contends that the notices were sent to an address in Kansas, rather than to his address in Louisville, Kentucky, where he resided. Hill looks to In Re Sweeney, 276 B.R. 186 (B.A.P. 6th Cir. 2002) as support for his position that this court should, at a minimum, convene a hearing to examine the issue of notice. Sweeney, however, is distinguishable from this case in two material respects. First, the debtor in Sweeney asserted that he "was completely ignorant of the [state court] litigation" until after the default judgment was entered. Id. at 90. In contrast, Hill in this case fully acknowledges that he had actual notice of the state court action prior to the Default Judgment being entered. Indeed, Hill vigorously defended the action for a large portion of the case. Hill's notice of the existence of the state court action supports a finding that he was afforded an opportunity to litigate these issues.

While Hill's *pro se* status and his misunderstanding of the consequences of his failure to appear at the pretrial hearing may have established grounds to set aside the Default Judgment for excusable neglect[2], this case again differs from Sweeney in that the state court has already made a determination that Hill received notice of the hearing. Specifically, the state court found that the "trial date was set by the Court's Second Civil Jury Trial Order, and Hill was aware of the trial date, and that he should appear for the trial or adverse consequences would occur." This finding was supported by the Second Civil Jury Trial Order which was mailed to Hill, at his Louisville address.

---

[2] The Court will take this opportunity to point out in the Motion to Set Aside default Judgment filed by Hill in the state court action, he did not allege a lack of notice as grounds for setting aside the judgment. Rather, he argued that the judgment should be set aside because he had been advised by an attorney not to attend the trial due to the bankruptcy case.

Here, the state court held that Hill received notice. Accordingly, this Court finds that the state court's determination that notice was proper is also entitled to full faith and credit under 28 U.S.C. § 1738. In re Henkel, 490 B.R. 759, 776-77 (Bankr. S.D. Ohio 2013) (where service was litigated in state court, the debtor was precluded from re-litigating that issue in the bankruptcy nondischargeability context). Correspondingly, because due process was provided in the state court action, Hill had a full and fair opportunity to litigate these issues in the state court action. See In re Foster, 280 B.R. 193, 207 (Bankr. S.D. Ohio 2002) (concluding that the debtor had an adequate opportunity to litigate the issue of fraud where the debtor sought reconsideration of the state tribunal's order and had the opportunity to seek further review of the order); Lexus Real Estate Group, Inc. v. Bullitt County Bank, 300 Fed. Appx. 351, 357 (6th Cir. 2008) (affirming the district court's determination that it was bound under 28 U.S.C. § 1738 by the state court's ruling regarding personal jurisdiction over the defendant where the issue of personal jurisdiction was affirmed by the state court of appeals); Griego v. Padilla (In re Griego), 64 F.3d 580, 585 (10th Cir. 1995) (holding that the issue of whether a party had a full and fair opportunity to litigate a claim could not be re-litigated where the state trial and appellate courts had considered and rejected this issue).

Hill also makes the argument that in the state court proceedings, the issues were not "actually litigated." Hill argues that because of the requirement of actual litigation, collateral estoppel should not apply to default judgments awarded in a non-bankruptcy forum. Hill cites In re Treadwell, 459 B.R. 394, 405 (Bankr. W.D. Mo. 2011) and In re Myers, 52 B.R. 901 (Bankr. E.D. Va. 1985) in support of his argument.

This Court believes Hill's reliance on those cases is misplaced as both those cases applied non-Kentucky law. As stated above, this Court must apply the law of the forum where the prior

14

judgment was entered. This judgment was entered in Kentucky, and Kentucky law gives preclusive effect to default judgments. See Davis v. Tuggle's Admr., 297 Ky. 376, 178 S.W.2d 979 (1944); In re Morris, 229 B.R. 683, 685 (Bankr. E.D. Ky. 1999). Second, at least with respect to the Treadwell case, the reason collateral estoppel did not apply was not that the complaining creditor was relying upon a default judgment, but more that in the state court action, the creditor failed to plead the requisite elements to support a finding of non-dischargeability under § 523 of the Bankruptcy Code. Treadwell at 406-407. As stated above, HLS' state court complaint did plead the necessary requisites to support a § 523(a)(6) determination.

Moreover, as discussed above, this is not a true default situation. The Court has cited numerous cases wherein default judgments have been given preclusive effect, when the default was entered for something other than a failure to answer or otherwise respond. FDIC v. Daily (In re Daily), 47 F.3d 365, 368–69 (9th Cir. 1995); Wolstein v. Docteroff (In re Docteroff), 133 F.3d 210, 215 (3d Cir. 1997); Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1324–25 (11th Cir. 1995); Corydon Palmer Dental Soc'y v. Johnson, Johnson & Assocs., Inc., 1988 WL 21334, at 1 (Ohio Court. App. 1988) ( the court gave preclusive effect to a default judgment, but only where the defendant had answered the complaint, then defaulted).

The Court also notes that the state court made specific findings of fact in the Damages Judgment with regard to Hill's conduct. HLS presented evidence at a trial from which the findings of fact were derived. This was not a simple one-line default judgment, but rather a comprehensive judgment complete with detailed findings of fact. Even in states where there is some question regarding the preclusive effect of default judgments, this default judgment would suffice.

In Hinze v. Robinson (In re Robinson), 242 B.R. 380 (Bankr. N.D. Ohio 1999), the

bankruptcy court first noted that under Ohio law, a default judgment obviates the plaintiff's burden to prove the elements of the claim alleged. Nevertheless, the court found that it was reasonable to assume that normally issues are not actually litigated for purposes of the collateral estoppel doctrine when a state court grants a motion for default judgment. To reconcile these principles, the court held that for default judgments to be given preclusive effect, the state court must decide the merits of the case and the best evidence would be findings of fact and conclusions of law by the court entering the default judgment. Id. at 387-388. See also In re Sweeney, 276 B.R. 186, 193-94 (B.A.P. 6th Cir. 2002) (adopting the Robinson test for Ohio cases and finding that for preclusive effect to be given default judgments, the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment); In re Cunningham, 2014 WL 1379136, at 9 (Bankr. N.D. Ohio 2014) (judgment entry was not sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding). Here, the state court found Hill liable to HLS on the counts alleged in the amended complaint, and issued detailed findings of fact in support of that determination. Thus, even under the more restrictive Ohio law, this default judgment would be given preclusive effect.

      Hill also argues that this matter should at a minimum have a hearing, citing Spilman v. Harley, 656 F.2d 224, 228 (6th Cir. 1981). In Spilman, the Circuit Court stated that before applying the doctrine of collateral estoppel, "the bankruptcy court should look at the entire record of the state court proceeding, not just the judgment (internal cites omitted), or hold a hearing if necessary." In Spilman, the Circuit Court held that where important issues are not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar re-litigation in the bankruptcy court. The Court notes that the viability of Spilman is seriously questioned. In

In re Calvert, 105 F.3d 315, 319 (6th Cir. 1997), a later panel of the Sixth Circuit questioned the legitimacy of Spilman in light of a later Supreme Court decision, Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985), and specifically held collateral estoppel could be used in default judgment situations.

Hill also takes issue with the fact that the Damages Judgment was drafted by HLS. Hill argues that because HLS drafted the Damages Judgment, it should somehow not be afforded the same weight as a judgment drafted by the state court. Hill did not cite to any case law that would support this argument, and this Court was unable to locate a reported decision where a judgment should be afforded less weight because it was drafted by a party rather than the court. Having said that, the Court would note that upon review of the Damages Judgment, the state court judge made several alterations to the document prepared by HLS. These alterations indicate that the state court did not simply "rubber stamp" the document prepared by HLS, but considered the contents of the document and ruled according to the evidence that was presented at the trial.

For all of the above reasons, the Court finds HLS' Motion for Summary Judgment is supported by the record, and establishes that HLS is entitled to summary judgment as a matter of law. Accordingly, HLS' Motion for Summary Judgment will be granted. A separate judgment will be entered in accordance with this order.

Additionally, the Court will set a status hearing on this matter by separate order to determine what, if any, action needs to be taken with respect to the remainder of the allegations raised in this case not addressed by this summary judgment motion.

_____
Alan C. Stout
United States Bankruptcy Judge
Dated: November 2, 2015

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | |
| AARON K. HILL | ) | CASE NO. 14-33623 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| CMCO MORTGAGE, LLC | ) | AP NO. 15-3001 |
| D/B/A HOME LENDING SOURCE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | |
| | ) | |
| AARON K. HILL | ) | |
| | ) | |
| Defendant. | ) | |

**JUDGMENT**

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the October 3, 2014 Findings of Fact and Judgment for Plaintiff CMCO Mortgage, LLC, D/B/A Home Lending Source entered in Jefferson Circuit Court is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

There being no just cause for delay, this is a final and appealable judgment.

Alan C. Stout
United States Bankruptcy Judge

Dated: November 2, 2015